UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE UNIVERSITY OF TEXAS SYSTEM and THE UNIVERSITY OF HOUSTON SYSTEM, | § § § § | |
| Plaintiffs, | § § | Civil Action No. _____ |
| v. | § § | |
| ALLIANTGROUP, LP and WHRA MERGER SUB II, INC. f/k/a WHR ARCHITECTS, INC., | § § § § | |
| Defendants. | | |

## COMPLAINT

COME NOW The University of Texas System and The University of Houston System ("Plaintiffs"), and file this action against Defendants alliantgroup, LP and WHRA Merger Sub II, Inc., showing to the Court as follows:

## PARTIES

1. The University of Texas System ("UT System") is an agency of the State of Texas and includes eight institutions of higher education and six health institutions. The UT System's main administrative offices are located in Austin, Texas.

2. The University of Houston System ("UH System") is an agency of the State of Texas, and includes four institutions of higher education. The UH System's main administrative offices are located in Houston, Texas.

3. Defendant alliantgroup, LP ("Alliant") is a Texas limited partnership, and has its principle place of business at 3009 Post Oak Blvd., Suite 2000, Houston, Texas 77056. Alliant may be served with process by serving its registered agent, John T. Simpson, at 3009 Post Oak Blvd., Suite 2000, Houston, Texas 77056.

4. Defendant WHRA Merger Sub II, Inc., f/k/a WHR Architects, Inc. ("WHR") is a Texas corporation, and has its principle place of business at 1111 Louisiana St., Houston, Texas 77002. WHR may be served with process by serving its registered agent, Capitol Corporation Services, Inc., 1701 Directors Blvd., #300, Austin, Texas 78744.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction of this case under 18 U.S.C. § 1964 and 28 U.S.C. § 1331 because this action arises under the laws of the United States. This action is based upon a violation of, and involves the resolution of substantial questions of federal law, specifically 18 U.S.C. § 1962 and 26 U.S.C. § 179D and related Internal Revenue Service Notices. This Court has supplemental jurisdiction of the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because the Defendants are subject to personal jurisdiction in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FEDERAL LAW – SECTION 179D DEDUCTIONS

7. Section 1331 of the Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594 (Aug. 8, 2005), created a tax deduction for the cost of energy efficient commercial property, which was codified at 26 U.S.C. § 179D ("Section 179D"). Section 179D allows a commercial owner of an energy efficient commercial property to receive the Section 179D deduction, to encourage the owner, via this tax incentive, to construct a more energy efficient building. The deduction reduces the ultimate net cost of the construction project, and increases the owner's return on investment. No engineer, architect or other designer receives any tax benefit, because

those parties are not the decision makers that Congress intended to influence through this tax incentive.

8. Section 179D(d)(4) is the special rule created for property owned by governmental entities, and that authorizes governmental entities to allocate Section 179D deductions. If no value is received by the governmental entity through a rebate or a reduction in design fees, an allocation of the deduction only increases the designer's profit. No rational governmental entity will make its construction decisions based on the ability to increase a private contractor's bottom line. Section 179D(d)(4) provides:

> In the case of energy efficient commercial building property installed on or in property owned by a Federal, State, or local government or a political subdivision thereof, the Secretary [of the Treasury] shall promulgate a regulation to allow the allocation of the dedication to the person primarily responsible for designing the property in lieu of the owner of such property. Such person shall be treated as the taxpayer for purposes of this section. 26 U.S.C. § 179D(d)(4)

9. The Internal Revenue Service ("IRS") has published Notices providing guidance on the tax deductions available under Section 179D, including I.R.S. Notice 2006-52, 2006-1 C.B. 1175, *Deduction for Energy Efficient Commercial Buildings* (June 26, 2006); I.R.S. Notice 2008-40, 2008-1 C.B. 725, *Amplification of Notice 2006-52*; *Deduction for Energy Efficient Commercial Buildings* (Apr. 7, 2008); and I.R.S. Notice 2012-26, 2012-17 I.R.B. 847, *Modification of Notice 2008-04*; *Deduction for Energy Efficient Commercial Buildings* (Apr. 23, 2012).

10. I.R.S. Notice 2008-40 directly relates to Section 179D(d)(4) and provides guidance on the "Special Rule for Government-Owned Buildings." The Notice states, in pertinent part:

> .01 *In General*. In the case of energy efficient commercial building property (or partially qualifying commercial building property for which a deduction is allowed under § 179D) that is installed on or in property owned by a Federal,

> State, or local government or a political subdivision thereof, the owner of the property *may allocate* the § 179D deduction to the person primarily responsible for designing the property (the designer). If the allocation of a § 179D deduction to a designer satisfies the requirements of this section, the deduction will be allowed only to that designer. The deduction will be allowed to the designer for the taxable year that includes the date on which the property is placed in service. *Id.* § 3.03.01. (emphasis added)

11.  The plain language of the Notice states that the allocation is permissive. This theme reappears later in the Notice where it states that the amount of the allocation is within the government's discretion.

> .06 *Tax Consequences to Designer of Government-Owned Buildings*. The maximum amount of the § 179D deduction to be allocated to the designer is the amount of the costs incurred by the owner of the government-owned building to place the energy efficient commercial building property in service. A partial deduction *may be allocated* and computed in accordance with the procedures set forth in sections 2 and 3 of Notice 2006-52. *Id.* § 3.03.06. (emphasis added)

12.  If an allocation is made, the owner of the public building is not required to include any amount in income on account of allocation, but is required to reduce the basis of the energy efficient commercial building property by the amount of the allocation. *Id.* § 3.03.07.

13.  The "designer" for purposes of the statute "is a person that creates the technical specifications for installation of energy efficient commercial building property (or partially qualifying commercial building property for which a deduction is allowed under § 179D)" and may include "an architect, engineer, contractor, environmental consultant or energy services provider." *Id.* § 3.02.

14.  A designer must receive written authorization for the allocation for the government-owned building (the "Allocation Form"), and the following requirements *must* be met to satisfy the "Form of Allocation," as it is described in I.R.S. Notice 2008-40:

> (1)   The name, address, and telephone number of an authorized representative of the owner of the government-owned building;

(2) The name, address, and telephone number of an authorized representative of the designer receiving the allocation of the § 179D deduction;

(3) The address of the government-owned building on or in which the property is installed;

(4) The cost of the property;

(5) The date the property is placed in service;

(6) The amount of the § 179D deduction allocated to the designer;

(7) The signatures of the authorized representatives of both the owner of the government-owned building and the designer or the designer's authorized representative; and

(8) A declaration, applicable to the allocation and any accompanying documents, signed by the authorized representative of the owner of the government-owned building, in the following form:

"Under penalties of perjury, I declare that I have examined this allocation, including accompanying documents, and to the best of my knowledge and belief, the facts presented in support of this allocation are true, correct, and complete." *Id*. § 3.04-.05.

### The WHR Contract with The University of Houston System

15. Effective September 29, 2011, The UH System and WHR executed an Owner-Architect Project Agreement concerning the University Center Transformation Project ("UH University Center" and "UH University Center Agreement"). WHR was paid $5,505,699.27, the total amount due it pursuant to the UH University Center Agreement. The UH University Center Agreement did not require that any tax credits or deductions be transferred to WHR by The University of Houston System.

### The WHR Contracts with The University of Austin System

16. Effective December 10, 2007, the UT System and JT Vaughn Construction Company, Inc. ("Vaughn") executed an Design/Build Agreement concerning the M.D. Anderson Cancer Center 1MC Building ("MD Anderson Cancer Center Building" and "M.D. Anderson Cancer Center Building Agreement"). WHR was the project architect and was paid the total amount due it pursuant to the M.D. Anderson Cancer Center Building Agreement.

---

**COMPLAINT** **PAGE 5**

17. Effective December 22, 2008, the UT System and Vaughn executed an Design/Build Agreement concerning the M.D. Anderson Cancer Center Parking Facility ("MD Anderson Cancer Center Parking Facility" and "M.D. Anderson Cancer Center Parking Facility Agreement"). WHR was the project architect and was paid the total amount due it pursuant to the M.D. Anderson Cancer Center Parking Facility Agreement.

18. The UT System and WHR executed an Architect's Agreement concerning the UT Health Science Center Project ("UT Health Science Center Project" and "UT Health Science Center Project Agreement"). WHR was paid the total amount due it pursuant to the UT Health Science Center Project Agreement.

19. The UT System and WHR executed an Architect's Agreement concerning the UT Health Science Center-Level 4 ("UT Health Science Center-Level 4" and "UT Health Science Center-Level 4 Agreement"). WHR was paid the total amount due it pursuant to the UT Health Science Center-Level 4 Agreement.

20. None of the four UT System projects identified above (the "UT Projects") required that any tax credits or deductions be transferred to WHR by the UT System.

21. The University of Houston Center Transformation Project and the UT Projects are collectively referred to herein as "The University Projects".

## ALLIANT AND WHR

22. Alliant touts itself as the nation's "premier provider of specialty tax services." In particular, Alliant states that its mission is to strengthen American businesses by helping US companies "take full advantage of federal and state tax credits, incentives, and deductions that are available to them." As part of its business, Alliant consults with businesses in an effort to

obtain Section 179D tax deductions.  Defendant WHR retained Alliant in connection with the University Projects identified above.

23.  As set forth in paragraph 14 above, to constitute a legal and compliant Allocation Form pursuant to § 179D, the Allocation Form must, in part, set forth the following:

(1)  The *amount* of the § 179D deduction allocated to the designer;

(2)  A declaration, applicable to the allocation and any accompanying documents, signed by the authorized representative of the owner of the government-owned building, in the following form:

"Under penalties of perjury, I declare that I have examined this allocation, including accompanying documents, and to the best of my knowledge and belief, the facts presented in support of this allocation are true, correct, and complete."

24.  Thus, because the "amount of the § 179D deduction allocated to the designer" must be included in the Allocation Form, and that amount cannot be determined until energy modeling and certification have occurred, the Allocation Forms can only be executed *after* the energy modeling has occurred and the building has been certified as energy efficient pursuant to the statute.

25.  Further, because an Allocation Form must be executed by an authorized government representative based upon facts that are "true, correct and complete", the Allocation Form likewise cannot be signed until: (i) the energy modeling has occurred, (ii) the building has been independently certified as energy efficient, and (iii) the amount of the allocation has been determined and included in the Allocation Form.

26.  Alliant, however, has engaged in a nationwide scheme to obtain defective and non-compliant Allocation Forms from thousands of government entities using misleading and deceptive practices.  Because Alliant touts itself as a leader with respect to Section 179D deductions, it knows that a valid Allocation Form must include the "amount of the Section 179D

deduction" and must be executed only on facts which are "true, correct and complete". Nevertheless, Alliant has attempted to obtain executed Allocation Forms from government entities *prior to* any energy modeling of the building, any independent certification of energy efficiency, and any computation of the Section 179D deduction amount.

27.  Alliant, alone and in conjunction with WHR and other "designers", presented non-compliant Allocation Forms to Plaintiffs concerning the University Projects, and engaged in misleading and deceptive practices in the following respects:

> a. Defendants obtained the signatures of Plaintiffs' representatives who were not legally authorized to sign the Allocation Forms;
>
> b. The Allocation Forms presented by Defendants failed to state the "amount" of the deduction being allocated to WHR, instead misleadingly providing only the percentage of the allocation in violation of Section 179D and I.R.S. Notice 2008-40;
>
> c. Defendants represented, in both the Allocation Forms and other communications, that the Allocation Forms could be completed prior to the necessary energy modeling, third-party certification and determination of the proper allocation amount in violation of Section 179D and I.R.S. Notice 2008-40;
>
> d. Alliant prepared and submitted Allocation Forms to the Plaintiffs which it well knew were not based on facts which were "true, correct and complete".

e. Alliant misrepresented to Plaintiffs that Plaintiffs were legally required to execute the Allocation Forms transferring deductions for the University Projects to WHR.

f. Alliant misrepresented that the Allocation Forms merely confirmed that WHR had worked on a University Project, when Alliant well knew the Forms purported to transfer Plaintiffs' Section 179D deductions to WHR.

g. Alliant misrepresented, by omission, that a transfer by Plaintiffs of Plaintiffs' Section 179D deductions would require Plaintiffs to reduce the basis of the University Projects.

## THE ALLOCATION FORMS ARE VOID

28. Only persons having actual authority to act on behalf of the State, granted by the Constitution or statute, can bind the State. *State ex rel. Dept. of Criminal Justice v. VitaPro Foods, Inc.*, 8 S.W.3d 316, 322 (Tex. 1999). Because none of the signatories to the Allocation Forms had actual authority to execute them, the Allocation Forms are void.

29. The Allocation Forms prepared by Defendants were in violation of Section 179D and IRS Notice 2008-40, and as a result, are illegal and void. *Mayfield v. Troutman*, 613 S.W.2d 339, 344 (Tex. Civ. App.—Tyler 1981, write ref'd n.r.e.)

30. The Texas Constitution prohibits the granting of public monies or assets to any individuals, associations or corporations without a corresponding receipt of value. Because the state building code Plaintiffs must comply with are more stringent than federal requirements and thus, for the most part, automatically qualify Plaintiffs for the 179D deduction, Defendants added no value to Plaintiffs by participating in the University Projects. Further, no monetary

consideration was provided by Defendants to Plaintiffs for the allocation of Section 179D deductions. As no value was given by Defendants, the Allocation Forms are illegal and void.

### TEXAS GOVERNMENT CODE 447.004(b-3) DOES NOT APPLY TO 179D TRANSACTIONS

31. Alliant has claimed that Texas Government Code 447.004(b-3) requires state agencies to execute Allocation Forms. Texas Government Code 447.004(b-3) does not apply to 179D transactions. Further, any mandate to allocate 179D deductions without proper consideration violates Article 3, Section 52 of the Texas Constitution. Finally, I.R.S. Notice 2008-40 expressly provides that the allocation of Section 179D deductions is permissive, and preempts Texas Government Code 447.004(b-3).

### COUNT ONE – RICO § 1962(c)

32. The allegations set forth in Paragraphs 1 - 31 above are incorporated herein by reference.

33. This Count is brought against Defendant Alliant only.

34. WHR is an enterprise engaged in, and whose activities affect, interstate commerce. Alliant's clients who seek allocation of Section 179D deductions from public entities (Section 179D Clients) are an association-in-fact enterprise whose activities affect interstate commerce. Alliant is associated with each enterprise.

35. Alliant agreed to, and did, conduct and participate in the conduct of the enterprises' affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs.

36. Pursuant to and in furtherance of its fraudulent scheme, Alliant committed multiple acts of wire fraud. Alliant voluntarily and intentionally devised and/or participated in a scheme to defraud Plaintiffs out of their property, Alliant did so with the intent to defraud, and Alliant used, or caused to be used, interstate wire communications in furtherance of its scheme. Alliant's acts of wire fraud, include, but are not limited to, the following:

    a.    Holly Schutt email to Jonathan Thurston dated July 2, 2013 with attached fraudulent Section 179D Allocation Form regarding WHR.

    b.    Holly Schutt email to Jonathon Thurston dated August 6, 2013 with attached fraudulent Section 179D Allocation Form regarding WHR.

    c.    Maggie Burkett email to Camille Porter dated January 19, 2015 regarding WHR.

    d.    Alliant Senior Managing Director Rizwan Virani letter to Jonathan Thurston dated May 7, 2015 regarding WHR.

    e.    Katie Fugnetti email to Jonathan Thurston dated February 14, 2014 with attached fraudulent Section 179D Allocation Form regarding Page Sutherland Page.

    f.    Katie Fugnetti email to Margaret Manley dated February 14, 2014 with attached fraudulent Schedule 179D Allocation Form regarding Page Sutherland Page.

    g.    Katie Fugnetti email to Katherine Miller dated February 25, 2014 with attached fraudulent Section 179D Allocation Form regarding Page Sutherland Page.

    h.    Ashly Gold email to Katherine Miller dated March 31, 2015 with attached fraudulent Section 179D Allocation Form regarding Page Sutherland Page.

    i.    Sarah Marks email to J.T. Williams dated January 8, 2016 with attached fraudulent Section 179D Allocation Form regarding Tellepson.

  j.  Holly Schutt email to Kelly Buehler dated January 21, 2014 with attached fraudulent Section 179D Allocation Form regarding Vaughn Construction.

  k.  Holly Schutt email to Jonathan Thurston dated August 20, 2013 with attached fraudulent Section 179D Allocation Form regarding Satterfield.

  l.  Sarah Marks email to Joujou Zedbaoui dated February 12, 2016 with attached fraudulent Section 179D Allocation Form regarding Shah Smith.

  m.  Cassandra Turner email to Katherine Miller dated August 9, 2013 with attached fraudulent Section 179D Allocation Form regarding Smith & Company.

  n.  Cassandra Turner email to John Posch dated August 15, 2013 which fraudulently represents that Dean Zerbe is a former United States Senator and co-author of Section 179D regarding Smith & Company.

  o.  Cassandra Turner email to Jonathan Thurston dated August 15, 2013 with attached fraudulent Section 179D Allocation Form regarding Smith & Company.

  p.  Holly Schutt email to Lawrence Qubacak dated July 3, 2013 with attached fraudulent Section 179D Allocation Form regarding WHR.

  q.  Holly Schutt email to William Stewart dated July 15, 2013 with attached fraudulent Section 179D Allocation Form regarding WHR.

  r.  Holly Schutt email to Dayle Pettus dated December 6, 2013 with attached fraudulent Section 179D Allocation Form regarding Vaughn Construction.

  s.  Holly Schutt letter to Dayle Pettus dated December 13, 2013 regarding Vaughn Construction.

  t.  Jennifer Marilley email to Vincent Yauger with attached fraudulent Section 179D Allocation Form regarding Hill and Wilkinson.

    u.      Courtney Code email to Vincent Yauger dated May 9, 2014 with attached fraudulent Section 179D Allocation Form regarding Hill and Wilkinson.

    v.      Jennifer Marilley email to Vincent Yauger dated July 15, 2013 with attached fraudulent Section 179D Allocation Form regarding Hill and Wilkinson.

    w.      Holly Schutt email to Vincent Yauger dated May 14, 2014 with attached fraudulent Section 179D Allocation Form regarding Spaw Glass.

    x.      Holly Schutt email to Vincent Yauger dated May 14, 2014 with attached fraudulent Section 179D Allocation Form regarding Dynamic Systems, Inc.

    y.      Holly Schutt email to Tom Burnette dated July 31, 2013 with attached fraudulent Section 179D Allocation Form regarding WHR.

    z.      Jennifer Marilley email to Dan Helmes dated June 13, 2013 with attached fraudulent Section 179D Allocation Form regarding JM Electrical.

    aa.      Rose Genung email to Maria Yebra-Teimouri dated October 14, 2013 with attached fraudulent Section 179D Allocation Form regarding Tri-City Electrical.

    bb.      Katie Fugnetti email to Peter Mayor dated January 28, 2014 with attached fraudulent Section 179D Allocation Form regarding Tilden-Coil.

    cc.      Rose Genung email to Kristy Guzman dated January 14, 2014 with attached fraudulent form regarding ME Engineers.

37.    The communications identified in Paragraph 35 above were false in one or more of the following respects.

    a.      The Allocation Forms presented by Alliant failed to state the amount of the deduction being allocated, instead misleadingly providing only the percentage of the allocation in violation of Section 179D.

  b. The communications misrepresented that the Allocation Forms could be completed prior to the necessary energy modeling, third-party certification and determination of the proper allocation amount in violation of Section 179D.

  c. The communications misrepresented that the facts contained therein were "true, correct and complete".

  d. The communications misrepresented that Plaintiffs were required to execute the Allocations Forms transferring deductions for the University Projects to WHR and other contractors.

  e. The communications misrepresented that the Allocation Forms merely confirmed that WHR and other contractors had worked on a University Project when Alliant well knew the forms purported to transfer Plaintiffs' Section 179D deductions to the contractors.

  f. The communications misrepresented, by omission, that a transfer by Plaintiffs of their Section 179D deductions would require Plaintiffs to reduce the basis of the University Projects.

38. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

39. Alliant has directly and indirectly conducted and participated in the conduct of the enterprises's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

40. As a direct and proximate result of Alliant's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that they have been defrauded of their property without compensation. Further, Plaintiffs have been

forced to reduce their basis in the property subject to the Allocation Forms, unless such Allocation Forms are voided.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Alliant for their actual damages, treble damages, unjust enrichment and attorney's fees.

### COUNT TWO – RICO § 1962(a)

41. The allegations set forth in paragraph 1 - 40 above are incorporated herein by reference.

42. This count is against Defendant Alliant only.

43. Alliant, WHR and the Section 179D Clients are each an enterprise engaged in and whose activities affect interstate commerce.

44. Alliant used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise. Specifically, Alliant has entered into agreements with its Section 179D Clients, and specifically including WHR, to obtain a large percentage of the value of Section 179D deductions from public entities through a pattern of racketeering activity.

45. The racketeering activity specified in paragraph 34 above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

46. As a direct and proximate result of Alliant's racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs have been injured in that they have been defrauded of their property without compensation.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Alliant for their actual damages, treble damages, unjust enrichment and attorney's fees.

### COUNT THREE – RICO § 1962(b)

47. The allegations set forth in paragraphs 1 – 46 above are incorporated herein by reference.

48. This count is against Defendant Alliant only.

49. Alliant, WHR and the Section 179D Clients are each an enterprise engaged in and whose activities affect interstate commerce.

50. Alliant acquired and maintained an interest in or control of the enterprise through a pattern of racketeering activity.

51. The racketeering activity specified in paragraph 34 above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

52. Alliant has directly and indirectly acquired and maintained interest in and/or control of the enterprise through a pattern of racketeering activities specified in paragraph 34 above, in violation of 18 U.S.C. § 1962(b).

53. As a direct and proximate result of Alliant's racketeering activities in violation of 18 U.S.C. § 1962(b), Plaintiffs have been injured in their business and property in that they have been defrauded of their property without compensation. Further, Plaintiffs have been forced to reduce their basis in the property subject to the Allocation Forms, unless such Allocation Forms are voided.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Alliant for their actual damages, treble damages, unjust enrichment and attorney's fees.

## COUNT FOUR – DECLARATORY JUDGMENT

54. Plaintiffs bring this claim against Defendants, and Plaintiffs reallege the facts stated in 1-53 above as if set forth specifically herein.

55. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Plaintiffs seek a declaration of the rights and legal relations of the parties in connection with the above described transactions including the validity of the Allocation Forms described above.

56. Plaintiffs request this Court to enter declaratory judgment that:

   a. Texas Government Code 447.004(b-3) does not apply to Section 179D transactions;

   b. Texas Government Code 447.004(b-3) does not require Plaintiffs to grant allocations without a corresponding receipt of value for the transfer; or

   c. I.R.S. Notice 2008-40 provides that the allocation of Section 179D deductions is permissive, and preempts Texas Government Code 447.004(b-3).

57. Plaintiffs request this Court to enter declaratory judgment declaring that the Allocation Forms executed by Plaintiffs' employees are void for one or more of the following reasons:

   a. Plaintiffs have strictly delegated signatory authority for various matters, and that delegation carries the force of law.

   b. Defendants obtained signatures on the Allocation Forms from Plaintiffs' employees who were not legally authorized to sign the Allocation Forms.

   c. The Texas Constitution prohibits Plaintiffs from making a grant of public monies or assets to any individuals, associations or corporations without a corresponding receipt of value for the transfer.

   d. The Allocation Forms presented by Defendants to Plaintiffs failed to state the amount of the § 179D deductions being allocated to WHR in violation of Section 179D and I.R.S. Notice 2008-40.

    e. The Allocation Forms presented by Defendants to Plaintiffs failed to set forth facts which were "true, correct, and complete" in violation of Section 179D and I.R.S. Notice 2008-40.

    f. Alliant misrepresented that the Allocation Forms merely confirmed that WHR had worked on University Projects, when Alliant knew well that the Allocation Forms purported to transfer Plaintiffs' Section 179D deductions to WHR.

    g. Alliant misrepresented, by omission, that a transfer by Plaintiffs of Plaintiffs' Section 179D deductions would require Plaintiffs to reduce the basis of the University Projects.

## COUNT FIVE – FRAUD AND MISREPRESENTATION

58. Plaintiffs reallege the facts stated in paragraphs 1-57 above as if set forth specifically herein.

59. This Count is against Alliant only.

60. Alliant, on behalf of itself and its client WHR, misrepresented to Plaintiffs that: (i) the proffered Allocation Forms were compliant with §179D and the applicable I.R.S. Notices; (ii) the Allocation Forms set forth all information required by the I.R.S. Code and I.R.S. Notices, and that the facts set forth therein were "true, correct, and complete;" (iii) the Allocation Forms "just ensure that an energy service provider did actually participate in the construction and the improvements of the project" when Defendants knew that the Allocation Forms purported to transfer Plaintiffs' Section 179D deductions and would be used by WHR when filing its tax returns to claim substantial tax deductions and to enrich Alliant; (iv) the Allocation Forms could be completed prior to the necessary energy modeling, third-party certification and the

determination of the proper § 179D deduction amount; and (v) Plaintiffs were legally required to execute the Allocation Forms transferring deductions for the University Projects to WHR.

61. Defendants' representations as set forth above were material. Further, Defendants either knew the representations were false or made the representations recklessly, as a positive assertion, and without knowledge of their truth. Defendants made the representations with the intent that Plaintiffs rely on them, and Plaintiffs did in fact rely on the representations, and such misrepresentations caused Plaintiffs damage. As a result, Plaintiffs are entitled to recover their actual damages, exemplary damages, restitution, pre- and post-judgment interest, and attorney's fees and costs.

## COUNT SIX – UNJUST ENRICHMENT

62. This claim is brought against both Defendants, and Plaintiffs reallege the facts stated in paragraph 1-61 above as if set forth specifically herein.

63. The Allocation Forms identified above are void, and were obtained from Plaintiffs by fraud, taking undue advantage, and/or mutual mistake. Therefore, Plaintiffs are entitled to recover from Defendants all benefits they received by use of the void Allocation Forms. The financial benefits received by Defendants exceed $1,621,000.

## PRAYER

Plaintiffs request that their declaratory judgment against Defendants be granted, that Plaintiffs recover their actual damages, treble damages, restitution, recoupment of Defendants' unjust enrichment, exemplary damages, pre- and post- judgment interest, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Michael E. McCue
Michael E. McCue
State Bar No. 13494150
Alex J. Pilawski
State Bar No. 24074899
Meadows, Collier, Reed, Cousins,
   Crouch & Ungerman, LLP
901 Main St., Suite 3700
Dallas, TX 75202
Telephone:  214-744-3700
Facsimile:   214-747-3732
mmccue@meadowscollier.com
apilawski@meadowscollier.com

ATTORNEYS FOR PLAINTIFFS THE UNIVERSITY OF TEXAS SYSTEM AND THE UNIVERSITY OF HOUSTON SYSTEM