IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE UNIVERSITY OF TEXAS SYSTEM, AND THE UNIVERSITY OF HOUSTON SYSTEM, | § § § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:17-cv-02588 |
| ALLIANTGROUP, LP, AND WHRA MERGER SUB, II, INC. n/k/a WHR ARCHITECTS, INC., | § § § § § | |
| *Defendants*. | § § | |

## DEFENDANT WHRA MERGER SUB, II, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITH PREJUDICE

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................. ii

PROCEDURAL HISTORY ........................................................................1

INTRODUCTION .......................................................................................2

I.    FACTUAL AND LEGAL BACKGROUND.................................5

    A.    The Parties .................................................................................5

    B.    Section 179D ..............................................................................6

    C.    Plaintiffs' Claims .....................................................................7

    D.    Plaintiffs' History with § 179D ..............................................8

II.   LEGAL STANDARD ...................................................................10

III.  ARGUMENTS AND AUTHORITIES .......................................10

    A.    Plaintiffs' Declaratory Judgment Claims Should be Dismissed. .......10

        1.    The Second Amended Complaint Fails to Provide a Basis for the Declaratory Relief Plaintiffs Seek. ...............................10

        2.    Section 447.004(b-3) Is Not Preempted by Federal Law. .......16

        3.    This Court Lacks Jurisdiction to Invalidate the WHR Allocation Forms.........................................................................18

    B.    Plaintiffs' Unjust Enrichment Claim Should be Dismissed..............21

IV.   CONCLUSION.............................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Mining Congress v. Mine Safety & Health Admin.*,
　995 F.2d 1106 (D.C. Cir. 1993) .........................................................18

*Amoco Prod. Co. v. Smith*,
　946 S.W.2d 162 (Tex. App.—El Paso 1997, no writ.) .....................24

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ..................................................................10, 24

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) ..........................................................................10

*Brooks v. Snow*,
　313 F. Supp. 2d 654 (S.D. Tex. 2004) .............................................21

*Burlington N. R. Co. v. Sw. Elec. Power Co.*,
　925 S.W.2d 92 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d
　467 (Tex. 1998) ................................................................................25

*California v. ARC Am. Corp.*,
　490 U.S. 93 (1989) ...........................................................................17

*Christian Coalition of Fla., Inc. v. United States*,
　662 F.3d 1182 (11th Cir. 2011) ..................................................13, 14

*City of Corpus Christi v. Pub. Util. Comm'n of Texas*,
　51 S.W.3d 231 (Tex. 2001) ..............................................................15

*Cohen v. United States*,
　650 F.3d 717 (D.C. Cir. 2011) .........................................................21

*Collin Cnty. Tex. v. Homeowners' Ass'n for Values Essential to
　Neighborhoods*,
　915 F.2d 167 (5th Cir. 1990) ...........................................................12

*Dusek v. Pfizer Inc.*,
   No. CIV.A. H-02-3559, 2004 WL 2191804 (S.D. Tex. Feb. 20,
   2004) ................................................................................................................18

*Edgewood Indep. Sch. Dist. v. Meno*,
   917 S.W.2d 717 (Tex. 1995), *as modified* (Feb. 16, 1995) ................................15

*Elk Grove Unified School Dist. v. Newdow*,
   542 U.S. 1 (2004)................................................................................................12

*Head v. N.M. Bd. of Examiners in Optometry*,
   374 U.S. 424 (1963)............................................................................................18

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
   832 S.W.2d 39 (Tex. 1992)............................................................................22, 23

*Hellmuth, Obata & Kassabaum, L.P. v. Efficiency Energy, LLC* .
   No. 14-cv-2945, 2016 WL 642352 (S.D. Tex. Feb. 18, 2016)....................5, 8, 9

*Henshel v. Guilden*,
   300 F. Supp. 470 (S.D.N.Y. 1969) ....................................................................21

*Jahn v. Regan*,
   584 F. Supp. 399 (E.D. Mich. 1984) ..................................................................21

*Lujan v. Def. of Wildlife*,
   504 U.S. 555 (1992)............................................................................................12

*McGowan & Co. v. Bogan*,
   93 F. Supp. 3d 624 (S.D. Tex. 2015)..................................................................22

*Oxford Fin. Cos., Inc. v. Velez*,
   807 S.W.2d 460 (Tex. App.—Austin 1991, writ denied)...................................24

*Pope v. Garrett*,
   211 S.W.2d 559 (Tex. 1948) ..............................................................................24

*Randall v. Loftsgaarden*,
   478 U.S. 647 (1986)............................................................................................25

*Remington v. United States*,
   210 F.3d 281 (5th Cir. 2000) .............................................................................18

*Smart v. Tower Land & Inv. Co.*,
    597 S.W.2d 333 (Tex. 1980) ...............................................................23

*Tarrant County v. Butler*,
    80 S.W. 656 (Tex. Civ. App.—Fort Worth 1904, no writ) .................14

*Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*,
    903 F.2d 445 (7th Cir. 1990) ...............................................................17

*Warren v. United States*,
    874 F.2d 280 (5th Cir. 1989) ........................................................19, 21

## Statutes

26 U.S.C. § 115(1) (2011) .............................................................................6

26 U.S.C. § 179D(a) (2011 & Supp. 2017) ...................................................6

26 U.S.C. § 7623 .........................................................................................20

28 U.S.C. § 2201(a) ...............................................................................11, 19

31 U.S.C. §3729(d) .....................................................................................20

I.R.C. § 179D ......................................................................................*passim*

TEX. GOV. CODE § 447.003(b-3)............................................................18, 23

TEX. GOV. CODE § 447.004 ...................................................................*passim*

## Other Authorities

54 Am. Jur. § 219.........................................................................................25

FED. R. CIV. P. 8 and 9 ..................................................................................2

FED. R. CIV. P. 12(b)(6)............................................................................5, 10

4 John N. Pomeroy, *A Treatise on Equity Jurisdiction*, § 1044, at 95
    (Spencer W. Symons, ed., 5th ed.) ....................................................25

Letter from Lourdes Castro Ramirez, Principal Deputy Assistance
    Secretary for Public and Indian Housing, to Executive Director,
    HUD (Oct. 21, 2016), *available at*
    https://www.hud.gov/sites/documents/PDASMEMO.PDF..................................9

Notice 2008-40 (IRS NOT), 2008-14 I.R.B. 725, 2008 WL 642559, §
    3.03 (Apr. 7, 2008).................................................................................................7

Rep. Charles Boustany, Jr., Ways and Means Committee, Is Energy
    Tax Deduction Being "Sold" to Line Government Slush Funds?
    (May 3, 2012), *available at*
    https://waysandmeans.house.gov/boustany-questions-gsa-
    kickback-policy ("May 3, 2012 Rep. Boustany Press Release") .........................4

Restatement of Restitution, § 160...........................................................................25

Roscoe Pound, *The Progress of Law, 1918-1919 Equity*, 33 Harv. L.
    Rev. 420, 420–21 (1920) ....................................................................................24

TEX. CONST. ART. 3........................................................................10, 11, 12, 14, 15

## <u>PROCEDURAL HISTORY</u>

Defendant WHRA MERGER SUB II, INC n/k/a WHR ARCHITECTS, INC. ("WHR") is moving to dismiss Plaintiffs' Second Amended Complaint ("Second Amended Complaint") with prejudice. Section 179D of the Internal Revenue Code allows for a tax deduction for property owners who invest in energy-efficient construction, and further allows for the allocation of that deduction to a design professional when the property owner is a government entity that cannot benefit from the tax deduction.  Plaintiffs are The University of Texas System ("UT System") and The University of Houston System ("UH System"), both government entities.  The Second Amended Complaint recites that Plaintiffs allocated § 179D deductions to WHR in 2013.  Sec. Am. Compl. ¶¶ 5, 59, 46(e)–(h), (j)–(m), 62 (Aug. 17, 2018), ECF No. 101.  Over four years later, Plaintiffs initiated this action, claiming that WHR should have paid all of its § 179D tax deduction to Plaintiffs, and contending that Defendant Alliantgroup, LP ("Alliantgroup"), WHR's tax consultant, somehow misled Plaintiffs into allocating the § 179D deductions to WHR.

Plaintiffs filed their original Complaint on August 23, 2017, alleging a claim under the Racketeer Influenced and Corrupt Practices Act ("RICO") and fraud against Alliantgroup, and claims for declaratory judgment and unjust enrichment against Alliantgroup and WHR.  Defendants Alliantgroup and WHR filed Motions

to Dismiss Plaintiffs' Complaint on November 8, 2017.   ECF Nos. 20, 22. Defendants demonstrated that the original Complaint failed to plead the elements of RICO, did not plead fraud with particularity, did not set out a justiciable claim for declaratory judgment, and failed to plead a cognizable basis for unjust enrichment recovery.  One day before their opposition to the motions were due, Plaintiffs sought leave to amend their Complaint; Defendants agreed.

The next day, December 14, 2017, Plaintiffs simultaneously filed their Amended Complaint and a consolidated opposition to Defendants' motions.  ECF No. 32.  Defendants Alliantgroup and WHR filed Motions to Dismiss Plaintiffs' Amended Complaint on January 12, 2018. ECF Nos. 39, 40.

On July 27, 2018, the Court issued its Order finding that Plaintiffs had not met their pleading burden under Rules 8 and 9 of the Federal Rules of Civil Procedure and granted Plaintiffs a third chance to properly plead their claims. Dkt. No. 92. Plaintiffs filed their Second Amended Complaint on August 17, 2018. ECF No. 101. To the extent Plaintiffs attempted in their Second Amended Complaint to remedy the pleading defect acknowledged by the Court, for the reasons set forth below, Plaintiffs have failed again and should not be give a fourth opportunity.

## **INTRODUCTION**

Through this suit, Plaintiffs seek to extract WHR's benefits from the § 179D federal income tax deductions that are unavailable to Plaintiffs as non-tax payers.

To accomplish this, Plaintiffs allege against Alliantgroup RICO and fraud claims. The only claims against WHR are the declaratory judgement action (Count One), and they seek compensation for unjust enrichment (Count Four). Plaintiffs' theories are nothing more than an attempted end run around the unambiguous language of a Texas statute. *See* TEX. GOV'T CODE § 447.004(b-3) (2012 & Supp. 2017). Section 447.004(b-3) states that a "governmental entity may not disallow the allocation of federal deductions to eligible design professionals authorized by the Energy Policy Act of 2005."[1] This provision required the allocation of the § 179D tax deductions to WHR as the designer of the five projects at issue.[2] Indeed, Plaintiffs complied with this statute in 2013 by executing the allocations at issue. Then, in 2016, the Plaintiffs demanded a so-called "rebate" for § 179D deductions properly allocated in 2013 by claiming for themselves the amount of WHR's § 179D tax deduction on WHR's federal income tax. Key to the Second Amended Complaint is Plaintiffs' contention now that § 447.004(b-3) does not mean what it says or is otherwise unenforceable. Sec. Am. Compl. ¶ 46.

Plaintiffs contend that there is no federal legislation or case that prohibits a governmental entity from receiving a cash rebate for allocating a § 179D deduction to a designer. *See* Sec. Am. Compl. ¶ 3. This assertion fails to mention that Texas

---

[1] The § 179D tax deductions are authorized by the Energy Policy Act of 2005. *See infra* Part I.B.

[2] The Plaintiffs have withdrawn their claim with respect to the UH Transformation GMP II Project by stipulation. ECF No. 105 ¶ 2.

law mandated that the Plaintiffs allocate the § 179D deduction to the designer (WHR in this case) without compensation. TEX. GOV'T CODE § 447.004(b-3). Moreover, the Second Amended Complaint points to no law—federal or state, common or statutory—that authorizes Plaintiffs to demand from WHR *one hundred percent* of WHR's five § 179D tax deductions at issue years after they were duly allocated.   Plaintiffs concede the obvious: that a § 179D deduction "creates a valuable incentive for the construction of emergency-efficient projects," and "incentivizes owners of property to invest in energy-efficient construction, and reduces the net cost of the construction project."  Sec. Am. Compl. ¶ 13.  However, Plaintiffs point to no provisions of (or policies behind) the Energy Policy Act of 2005 that allow or encourage Plaintiffs' attempted after-the-fact cash-grab—cash that the Plaintiffs' consultant, William Volker, gets a percentage of. As government entities, Plaintiffs cannot use the § 179D deduction, nor should they be permitted to require a payment for designers to do so.  *See* Press Release, Rep. Charles Boustany, Jr., Ways and Means Committee, Is Energy Tax Deduction Being "Sold" to Line Government Slush Funds? (May 3, 2012), *available at* https://waysandmeans.house.gov/boustany-questions-gsa-kickback-policy ("Requiring a cash payment for a tax deduction is a kickback, pure and simple.") ("May 3, 2012 Rep. Boustany Press Release").

Plaintiffs are not strangers to § 179D allocations.  Their prior involvement with the statutory scheme is well-documented in *Hellmuth, Obata & Kassabaum, L.P. v. Efficiency Energy, LLC* ("*HOK*").  No. 14-cv-2945, 2016 WL 642352 (S.D. Tex. Feb. 18, 2016).  Plaintiffs are represented here by the same law firm as the defendant in *HOK*.  The *HOK* defendant, which claimed to be a § 179D expert, counter-claimed for defamation based on the plaintiff's statement that a request that part of a Section 179D deduction be paid to UT Austin was in effect seeking a kickback.  That claim failed as a matter of law.  This action appears to be nothing more than a repackaging of the meritless arguments made there, based on events that took place years after the events in *HOK*.

In sum, Plaintiffs seek to become the taxpayer, in direct conflict with 26 U.S.C. § 179D and its provision that the designer shall be treated as the taxpayer.  Accordingly, the claims against WHR should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    FACTUAL AND LEGAL BACKGROUND

**A.    The Parties**

Plaintiffs, the UT System and the UH System, manage educational institutions.  *See* Sec. Am. Compl. ¶¶ 7–8.

Defendant Alliantgroup is a Texas limited partnership based in Houston that provides clients with federal and state tax consulting services, including with respect to claiming tax credits and deductions. *See id.* ¶ 9.

Defendant WHR is a Texas corporation based in Houston that created energy-efficient technical specifications for several building projects in the UT System and the UH System. *See id.* ¶¶ 10, 22–26. Working with Plaintiffs, Alliantgroup worked for WHR for an hourly fee to obtain tax benefits under § 179D for the design services that WHR provided for these projects. *See id.* ¶¶ 27–28.

## B.    Section 179D

Section 179D allows an owner of an "Energy Efficient Commercial Building Property" ("EECBP") to claim a federal tax deduction in "an amount equal to the cost of [EECBP] placed in service during the taxable year." 26 U.S.C. § 179D(a) (2011 & Supp. 2017). Section 179D was enacted as part of the Energy Policy Act of 2005. *See* Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594 (Aug. 8, 2005).

Government entities like Plaintiffs are not subject to federal taxation and, as a result, cannot utilize a § 179D deduction. *See* 26 U.S.C. § 115(1) (2011). Instead, under § 179D(d)(4), government entities that own EECBP's may allocate the deduction to "the person primarily responsible for designing the property," who

6

may claim the deduction "in lieu of the owner of such property." *Id.* at § 179D(d)(4).  After this provision took effect, the Texas legislature enacted Texas Government Code § 447.004(b-3), which states in relevant part that "[a] governmental entity may not disallow the allocation of federal deductions to eligible design professionals authorized by the Energy Policy Act of 2005."  Tᴇx. Gᴏᴠ'ᴛ Cᴏᴅᴇ § 447.004(b-3).

The IRS has published guidance on what it requires of taxpayers who claim a § 179D deduction.  IRS Notice 2008-40 states, among other provisions, that the allocation form must be in writing, contain contact information for both the governmental entity and the designer, and be signed under penalties of perjury. *See* Notice 2008-40 (IRS NOT), 2008-14 I.R.B. 725, 2008 WL 642559, § 3.03 (Apr. 7, 2008).  IRS Notice 2008-40 also explains that the allocation form need not be filed with the IRS and instead should be kept by the designer if ever needed to substantiate the deduction in connection with an audit. *Id.* § 3.05.

## C.    Plaintiffs' Claims

The Second Amended Complaint now alleges four claims against Alliantgroup (as opposed to six, originally), and only two against WHR.  Count One seeks thirteen declaratory judgments, requesting, in essence, that this Court find that Texas Government Code § 447.004(b-3) did not require Plaintiffs to allocate their § 179D deductions, and/or violates the Texas Constitution, and/or is

7

preempted by federal law.  Count One also seeks rulings that the Allocation Forms are void.  Sec. Am. Compl. ¶¶ 80–82.  Count Four alleges unjust enrichment and seeks payment of "all the benefits [Defendants] received by use of the void Allocation Forms."  *Id*. ¶¶ 44–46.  In other words, Plaintiffs seek 100% of WHR's tax deduction that Plaintiffs could never receive themselves under the Energy Policy Act of 2005, §179D and IRS Notice 2008-40.

**D.      Plaintiffs' History with § 179D**

Plaintiffs are not new to § 179D.  *See Hellmuth, Obata & Kassabaum, L.P. v. Efficiency Energy, LLC* ("*HOK*"), No. 14-cv-2945, 2016 WL 642352 (S.D. Tex. Feb. 18, 2016).  In 2011, the UT System retained William Volker as an expert to help advise them on the allocation of § 179D deductions, including by identifying qualifying buildings, negotiating with the designer, and procuring payments for allocation.  *See id.* at *1–2.  In connection with their work for the UT System, Volker and his company were sued by the designer in that case, HOK.  *See id.* at *2.[3]  Like Alliantgroup did for WHR in 2013, the *HOK* plaintiff requested an allocation form for a UT System property.  *Id*.  On the UT System's behalf, Volker then sought to extract a payment in exchange for the allocation—exactly what

---

[3] The *HOK* case specifically involved UT Austin, which is part of the UT System. *HOK*, 2016 WL 164112 at *1 (Jan. 14, 2016).

Plaintiffs claim should have happened here.[4]  *See id*.  The *HOK* plaintiff accused Volker of seeking a kickback, and the *HOK* court held that this accusation was not defamatory.  *See HOK*, 2016 WL 642352, at *4.

Volker's designated expert in the *HOK* matter, Engineered Tax Services, has itself publicly stated that any such payments would likely be construed as "illegal" and a "kickback" by the IRS, and that sharing § 179D deductions with government entities is "nothing short of risky."  Ex. A.[5]  The Department of Housing and Urban Development has similarly decried the practice.  *See* Letter from Lourdes Castro Ramirez, Principal Deputy Assistance Secretary for Public and Indian Housing, to Executive Director, HUD (Oct. 21, 2016), *available at* https://www.hud.gov/sites/documents/PDASMEMO.PDF ("The allocation letters were not meant to serve as an opportunity for a state or local government official to engage in the practice of seeking any benefit as a condition of issuing an allocation letter.  This approach runs counter to the intent of the Section 179D provision . . . .").  Members of Congress have spoken out against such payments as well. *See* May 3, 2012 Rep. Boustany Press Release, *supra*.  Undeterred, however, Plaintiffs ask this Court to endorse this unlawful practice in this suit.

---

[4] The *HOK* Court ultimately held that the proper parties for the dispute before it were the plaintiff and UT, not Volker.  *HOK*, 2016 WL 164112, at *4.

[5] Notably, Plaintiffs' attorney here also represented Volker and Efficiency Energy in *HOK* and designated Engineered Tax Services as Volker's expert in that case. *HOK*, 2016 WL 164112, at *9.

## II.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege non-conclusory facts that "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders 'naked assertion[s],' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## III.   <u>ARGUMENTS AND AUTHORITIES</u>

**A.   Plaintiffs' Declaratory Judgment Claims Should be Dismissed.**

Plaintiffs request thirteen separate declaratory judgments that fall into one of three groups:  first, they ask that this Court find that an unambiguous statute does not mean what it says, or that it should be invalidated; second, they ask that this Court find that the same statute is preempted by federal tax law; and third, they ask that this Court void the Allocation Forms because they were issued without proper authority or adequate compensation.  None of these requests is proper before this Court.

**1.   The Second Amended Complaint Fails to Provide a Basis for the Declaratory Relief Plaintiffs Seek.**

Plaintiffs seek the following as declaratory judgments concerning Texas law:

- "Article III, Section 51 of the Texas Constitution prohibit Plaintiffs from making a grant of public funds, property or contract rights to any

individuals, associations or corporations without a corresponding receipt of 'adequate compensation.'" Sec. Am. Compl. ¶ 46(a).

- "Tex. Gov. Codes 447.004(b-3) does not require Plaintiffs to allocate § 179D deductions to any private entity or entity unless it receives 'adequate compensation' in return." Sec. Am. Compl. ¶ 46(b).

- "Tex. Gov. Code 447.004(b-3), to the extent it mandates the allocation of § 179D deductions by the Plaintiffs, without adequate compensation in return, is unconstitutional in violation of Art. III, Section 51 of the Texas Constitution." Sec. Am. Compl. ¶ 46(c).

In sum, Plaintiffs ask this Court either to hold that § 447.004(b-3) does not mean what it says, or is in violation of the Texas Constitution for lack of compensation. Plaintiffs seek in this suit to be paid four years after the fact for the Allocations that § 447.004(b-3) clearly says may not be disallowed and that provides no permission for the governmental entity to receive any compensation in return. As an initial matter, Plaintiffs have no standing to challenge § 447.004(b-3) in this suit. Even if Plaintiffs did have standing, the statute is unambiguous, and the Court does not have the authority to alter its plain meaning. Further, the section of the Texas Constitution Plaintiffs rely on does not support dismantling Texas' clearly established statutory scheme.

### a) Plaintiffs have no standing to challenge the Texas statute in this action.

None of these three proposed declarations is properly within this Court's jurisdiction.  The Declaratory Judgment Act extends only to a "case of actual controversy within [the Court's] jurisdiction," 28 U.S.C. § 2201(a), a limitation

that expressly "recognizes that the case or controversy requirement of Art. III of the Constitution applies in the declaratory judgment context," *Collin Cnty. Tex. v. Homeowners' Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). "Article III standing," in turn, "enforces the Constitution's case-or-controversy requirement." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004). The "irreducible constitutional minimum" that a plaintiff must show to have Article III standing consists of an "injury in fact" that is caused by the defendant's action, and that is "likely" to be "redressed by a favorable decision." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs fail to meet every part of this test, because they are suing the wrong defendants. The abstract argument about the validity of § 447.004(b-3) is a matter for Plaintiffs to resolve with the State of Texas; Alliantgroup and WHR have no power to enforce that law. Moreover, Plaintiffs cannot allege any injury that Defendants have caused them relating to § 447.004(b-3). Plaintiffs admit that they have no interest in doing what Texas law forbids—disallowing any § 179D deduction—and instead freely acknowledge that they "would have negotiated with companies qualifying as designer pursuant to § 179D" to allocate the deductions. Sec. Am. Compl. ¶ 65. And Plaintiffs likewise acknowledge that neither the Defendants nor the plain text of §447.004(b-3) prevented them from implementing their payment-for-allocation scheme: "Both the UT System and UH System have

incorporated provisions within their standard construction contracts which require the successful bidder to enter into good faith negotiations with the Universities as to the allocation of § 179D deductions." Sec. Am. Compl. ¶ 65. No such requirements were in WHR's contracts with the Plaintiffs. A declaratory judgment against Alliantgroup or WHR could not possibly redress whatever injury Plaintiffs hypothesize might have happened in 2013. The abstract interpretation and validity of §447.004(b-3) has no relevance to any concrete dispute between the parties, and Plaintiffs lack standing to raise these issues.

### b) The Texas statute is unambiguous and the Court does not have authority to alter its plain meaning.

Plaintiffs cannot obtain an order invalidating an unambiguous statute. *See Christian Coalition of Fla., Inc. v. United States*, 662 F.3d 1182, 1193 (11th Cir. 2011) (noting that the "unambiguous prohibitions" of the Declaratory Judgment Act precluded the court from rewriting the language of unambiguous statutes). As noted, § 447.004(b-3) states: "A governmental entity may not disallow the allocation of federal deductions to eligible design professionals authorized by the Energy Policy Act of 2005." TEX. GOV'T CODE § 447.004(b-3). Section 447.004(b-3) explicitly mentions the Act that includes § 179D and, like the Internal Revenue Code, references design professionals. *See id*.

Plaintiffs ask the Court to effectively re-write § 447.004(b-3) to include the requirement that any designer who receives an allocation must pay "adequate

consideration" to the governmental entity. Sec. Am. Compl. ¶¶ 46(a)–(c). This is an extreme request, particularly since there is no hint of support for Plaintiffs' claim in the statute. *See generally* TEX. GOV'T CODE § 447.004(b-3). The Court cannot alter the plain meaning of § 447.004(b-3) because it is unambiguous, and its text offers no support for the additional terms Plaintiffs ask the Court to add. *See Christian Coalition*, 662 F.3d at 1193.

### c) The Texas Constitution does not support dismantling the Texas Legislature's clearly-established statutory scheme.

Plaintiffs erroneously contend that § 447.004(b-3) and its mandate that Plaintiffs allocate  § 179D deductions without corresponding compensation violates Article III, Section 51 of the Texas Constitution because it requires Plaintiffs to make a grant of "public funds, property, or contract rights" without a corresponding receipt of compensation.  Sec. Am. Compl. ¶¶ 46(a), (c).  However, Section 51 does not discuss an exchange of compensation or property and contract rights:

> The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; provided that the provisions of this Section shall not be construed so as to prevent the grant of aid in cases of public calamity.

Tex. Const. art. III, § 51. Plaintiffs also misconstrue the meaning of "public moneys." *See Tarrant County v. Butler*, 80 S.W. 656, 659 (Tex. Civ. App.—Fort Worth 1904, no writ) (noting that "the framers of the Constitution most probably

14

[defined public moneys as] moneys received by officers of the state, and belonging to the state, derived in the ordinary processes of taxation, and in other ways permissible under the Constitution"). "Public moneys" are money the state already possesses, *not* a tax deduction that a public university could never itself utilize. Essentially, the language Plaintiffs anchor their Second Amended Complaint with proves to be no anchor at all. Section 51 has traditionally been interpreted to bar the assignment of funds *already collected* from the taxpayers as a whole to certain select persons and groups. *See, e.g.*, *City of Corpus Christi v. Pub. Util. Comm'n of Texas*, 51 S.W.3d 231, 254 (Tex. 2001) (finding that Article III, Section 51 was not violated where no previously collected public funds were expended to pay the disputed charges). These are not the alleged facts of this case.

Even if § 179D deductions were to qualify as "public moneys," Plaintiffs' position would still be fatally flawed.  As the Texas Supreme Court has explained, "[a] transfer of funds for a public purpose, with a clear public benefit received in return, does not amount to a lending of credit or grant of public funds in violation of article III, § 51 and 52." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995), *as modified* (Feb. 16, 1995). The mandatory allocation of deductions under §447.004(b-3) serves a public purpose, and produces a clear public benefit.

Section 447.004(b-3) is part of a broader regulatory scheme governing

energy standards for public buildings.  *See* TEX. GOV. CODE § 447.004(a).  The Texas Legislature was well within its rights to determine that energy efficiency in public buildings qualifies as a public good, and that requiring construction of state-owned buildings to meet certain energy standards produces a clear public benefit. Plaintiffs may not agree with these policy considerations.  But it is beyond dispute that § 447.004(b-3)'s mandatory allocation system is at least one plausible way that the Texas Legislature could seek to advance the public good of energy efficiency. That is reason enough for this Court to refrain from breaking new ground in Texas constitutional law, and to leave § 447.004(b-3) undisturbed.

### 2.    Section 447.004(b-3) Is Not Preempted by Federal Law.

Plaintiffs next ask for declaratory judgment that:

> Texas Government Code § 447.004(b-3), to the extent it requires governmental entities to allocate § 179D deductions, is preempted by 26 U.S.C. § 179D, and IRS Notices and Memoranda regarding § 179D, in that those authorities make such allocations permissive, and not mandatory.

Sec. Am. Compl. ¶ 46(d). Absent an express statement that Congress intends to preempt state law, courts typically consider whether (1) Congress intended to occupy the field, or (2) the state law conflicts with federal law such that compliance with both is impossible. *California v. ARC Am. Corp.*, 490 U.S. 93, 100–01 (1989). The complaint cannot support either of these factors given the

plain language of the federal and state statutes in question and the complaint.[6]
There is no allegation or authority cited in the Second Amended Complaint that
Congress intended to occupy the field with respect to § 179D.

The enforcement of both § 179D and § 447.004(b-3) is not impossible.
Looking first to the language of the federal statute, § 179D does not itself provide
that an allocation is either mandatory or permissive.  Plaintiffs' reference to IRS
"Notices and Memoranda" must be IRS Notice 2008-40 because the Amended
Complaint fails to mention any other IRS publication.  An IRS notice is not,
however, a statute or a regulation, nor does it have the force of law.  As such, it
cannot preempt state law.  *See Wabash Valley Power Ass'n, Inc. v. Rural
Electrification Admin.*, 903 F.2d 445, 453–54 (7th Cir. 1990) ("In order to preempt
state authority, [agencies] must establish rules with the force of law. . . . We have
not found any case holding that a federal agency may preempt state law without
either rulemaking or adjudication."), *cited in Dusek v. Pfizer Inc.*, No. CIV.A. H-
02-3559, 2004 WL 2191804, at *9 (S.D. Tex. Feb. 20, 2004); *see also Am. Mining
Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109–1113 (D.C. Cir.
1993) (describing the weight given to various administrative agency actions
generally and concluding that where such action is based on specific statutory
provision and merely provides the agency's understanding of what a statute

---

[6] Plaintiffs do not plead field preemption, so WHR does not address it.

requires, the action is interpretative and does not have the force and effect of law).

Regardless, there is no conflict between IRS Notice 2008-40 and § 447.004(b-3).

In making clear that governmental entities nationwide may allocate § 179D

deductions, IRS Notice 2008-40, even if it had the force of law to support a

preemption argument, does not preclude individual state legislatures from deciding

that, within their jurisdiction, the allocation may not be withheld, as in Texas. *See*

TEX. GOV. CODE § 447.003(b-3).

Plaintiffs have failed to allege that compliance with both § 179D and §

447.003(b-3) is impossible, or to provide any factual support or explanation for

this proposition. Accordingly, Plaintiffs have failed to meet their pleading burden,

and § 447.003(b-3) is not preempted. *See Remington v. United States*, 210 F.3d

281, 284 (5th Cir. 2000) (rejecting preemption argument where "compliance with

both" federal and state law was not "impossible"); *see also Head v. N.M. Bd. of*

*Examiners in Optometry*, 374 U.S. 424, 432 (1963) (rejecting claim that a state

regulation of advertising was preempted by Federal Communications Act, as state

law supplemented, rather than conflicted with, federal authority).

### 3. This Court Lacks Jurisdiction to Invalidate the WHR Allocation Forms.

Count One includes eight requests for declaratory judgment that ask the

Court to find that Allocation Forms be declared *void ab initio* because (1) of a lack

of consideration, and (2) the employees signing on behalf of the Plaintiffs did not

have actual authority to execute the Allocation Forms.  Sec. Am. Compl. ¶¶ 46(e)–(h), (j)–(m).  These allegations are relevant, if at all, to whether the IRS should have allowed deductions WHR took.  A declaratory judgment by this Court invalidating the Allocation Forms would have no impact on the merits of Plaintiffs' other causes of action and would only have the effect of possibly calling into question the deductions taken by WHR on its federal income tax returns—something exclusively within the purview of the IRS.

The Declaratory Judgments Act specifically excepts controversies "with respect to Federal taxes" from federal courts' jurisdiction to enter declaratory judgments, with a few non-applicable exceptions.  28 U.S.C. § 2201(a) (2006). This prohibition on declaratory judgments "with respect to Federal taxes" is intended to be given broad effect.  *See Warren v. United States*, 874 F.2d 280, 282 (5th Cir. 1989).  To read it otherwise would be to hand enforcement of federal tax law over to private plaintiffs in civil litigation.  Where Congress has intended to involve private parties in the enforcement of the tax code, it has spoken with unmistakable clarity and carefully delimited the scope of their involvement in litigation over the tax liabilities of other private parties.  For example, Congress expressly exempted tax claims from private *qui tam* enforcement under the False Claims Act, *see* 31 U.S.C. §3729(d), and instead created a mechanism to reward tax whistleblowers that keeps litigation authority in tax enforcement matters

19

exclusively in the government's hands, *see* 26 U.S.C. § 7623 (authorizing awards to whistleblowers "if the Secretary proceeds with any administrative or judicial action" based on information they provide).

The sole purpose of the Allocation Forms is to substantiate any tax deduction taken by WHR.   Notice 2008-40 § 3.05.   For this reason alone, a determination of the sufficiency of the Allocation Forms must remain solely within the purview of the IRS.

The greater portion of IRS Notice 2008-40 provides guidance to taxpayers as to what the IRS may accept for certification of whether a building meets the energy efficiency standards of § 179D.   In Section 3, Notice 2008-40 also addresses the allocation of the § 179D deduction by government owners to designers.   Section 3.04 states that the allocation "must be in writing" and "will be treated as satisfying the requirements" if it contains information listed in the Notice.

Nowhere does Notice 2008-40 state that an allocation form will be rejected if it is deficient in one or more of the listed criteria.  All that the Notice does is provide taxpayers (defined as the designer by §179D(d)(4)) certainty as to what the IRS will accept.   The IRS, and solely the IRS, has the discretion to determine whether that criteria is met, or whether something different will suffice.  *See Warren*, 874 F.2d at 282; *Brooks v. Snow*, 313 F. Supp. 2d 654, 660 (S.D. Tex. 2004).

Plaintiffs cannot escape that a declaration that the Allocation Forms are invalid for any reason could result in invalidating some, all, or part of WHR's tax deductions, as the IRS might determine. As a result, Plaintiffs' declaratory relief claims run headlong into § 2201's jurisdictional bar, and should be dismissed for this reason.[7]

## B.   Plaintiffs' Unjust Enrichment Claim Should be Dismissed.

The Court should also dismiss Plaintiffs' attempted recovery through unjust enrichment in Count Four. This common-law form of recovery is, again, governed by Texas law. *See McGowan & Co. v. Bogan*, 93 F. Supp. 3d 624, 657 (S.D. Tex. 2015). Plaintiffs assert that, because the WHR § 179D Allocation Forms at issue are "*void ab initio*," Plaintiffs are "entitled to receive from Defendants all benefits

---

[7] None of the cases Plaintiffs previously relied on in their briefs are on point. *See* Dkt. No. 32. *Cohen v. United States*, 650 F.3d 717, 720-21 (D.C. Cir. 2011), concerned the procedures for claiming a refund on previously paid taxes. That case did not "directly affect the disposition of any federal tax," and even a victory for appellants would not secure them a tax refund. *Id.* at 728. Here, in contrast, a victory for Plaintiffs could affect the disposition of WHR's tax liabilities. Likewise, *Jahn v. Regan*, 584 F. Supp. 399, 408 (E.D. Mich. 1984), concerned the procedure for transferring a federal tax refund, not the determination of the tax itself. And *Henshel v. Guilden*, 300 F. Supp. 470, 471 (S.D.N.Y. 1969), involved a dispute over who would pay an admitted tax liability. None of these cases required a federal court to determine whether a tax liability existed in the first place. But this one does.

they received," which Plaintiffs allege exceeds $1.0 million for WHR.  Sec. Am. Compl. ¶ 87.[8]

As an initial matter, Plaintiffs have failed to sufficiently allege facts in support of the recovery they seek for unjust enrichment.  "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  Plaintiffs have not alleged any facts that could support a finding of such conduct by WHR.  *See* Sec. Am. Compl. ¶¶ 67–70.  The bases alleged in the Second Amended Complaint for unjust enrichment recovery are that the Allocations were taken "by fraud, taking undue advantage, and/or mutual mistake." Sec. Am. Compl. ¶ 68.  The Plaintiffs make no such allegations against WHR that could be a basis for seeking recovery by unjust enrichment against WHR.

Plaintiffs complain that WHR received a "windfall" when the UH System and the UT System made the allocations at issue. Sec. Am. Compl. ¶ 26. Even assuming the Plaintiffs' compliance with § 447.003(b-3) gave WHR a windfall in the form of § 179D allocations, it does not justify applying the equitable remedy of unjust enrichment to make WHR pay the Plaintiffs 100% of WHR's tax savings.

---

[8]  The complaint at ¶ 69 contains an apparent math error. It says that WHR's tax savings was $1,810,541. However, it also says that $882,961 is owed to UT, and $198,180 is owed to UH.

"Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Heldenfels*, 832 S.W.2d at 42 (internal quotations and citation omitted).   Plaintiffs complied with § 447.003(b-3) in making the allocations, and WHR received the value of the deductions prescribed by law.

Further, unjust enrichment is not an available remedy where the party bringing the claim had a legal duty to perform the services that it claims unjustly enriched another. *See Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 337 (Tex. 1980) (recognizing that unjust enrichment involves one person conferring a benefit upon another where they had no legal duty to do so).   Here, Plaintiffs had a legal duty to allocate the § 179D deduction to the designer of each building project at issue.[9]   *See* TEX. GOV'T. CODE § 447.004(b-3).   Plaintiffs do not explain how it is unjust for WHR to receive federal income tax deduction credits from the federal government that Plaintiffs had a legal duty to allocate, nor can they.   Plaintiffs' mere recital of elements of unjust enrichment is insufficient and should be dismissed accordingly.   *See Iqbal*, 556 U.S. at 678.

Plaintiffs' unjust enrichment recovery also fails to the extent they seek it based upon a declaratory judgment that the § 179D Allocation Forms are void from

---

[9] Plaintiffs may contest and disagree with the law, but that does not make it any less of a legal duty.

inception.  As discussed above, whether the Allocation Forms are proper is a tax matter that falls exclusively within the purview of the IRS.  Because it is outside this Court's purview to determine that the forms are invalid, Plaintiffs may not recover through unjust enrichment based upon the Allocation Forms being invalid.

Even if the Allocation Forms were invalid, that would not entitle Plaintiffs to "[t]he financial benefits received by Defendants."  Sec. Am. Compl. ¶ 87.  Under Texas law, unjust enrichment is not a distinct independent cause of action but simply a theory of recovery.  *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ.); *Oxford Fin. Cos., Inc. v. Velez*, 807 S.W.2d 460, 465 (Tex. App.—Austin 1991, writ denied).  Recovery on the basis of unjust enrichment can, at most, warrant "restitution of a received benefit" to a plaintiff. *See, e.g., Pope v. Garrett*, 211 S.W.2d 559, 562 (Tex. 1948) (citing Roscoe Pound, *The Progress of Law, 1918-1919 Equity*, 33 Harv. L. Rev. 420, 420–21 (1920); 4 John N. Pomeroy, *A Treatise on Equity Jurisdiction*, § 1044, at 95 (Spencer W. Symons, ed., 5th ed.); 54 Am. Jur. § 219, at 169; Restatement of Restitution, § 160, cmts. (c) and (d) (1936)).  And, "[t]he purpose of restitution is to place an aggrieved plaintiff in the position he occupied prior to his dealings with the defendant"—not to grant the plaintiff a benefit that he never could have otherwise received.  *Burlington N. R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998).  The Second

Amended Complaint fails completely to articulate any facts (and not mere conjecture) detailing how they could have "monetized" the allocations at issue. This would require "facts" of a hypothetical negotiation in 2013 that never happened. Thus, Plaintiffs fail to allege any facts of the benefit they lost.

Here, if WHR was unable to properly claim a § 179D deduction, that could possibly result in WHR owing additional income tax—nothing more. Indeed, the amount of that deduction was computed based upon WHR's own particular tax circumstances, allowed or disallowed by the IRS, and would have zero value to Plaintiffs, who are not subject to income tax. *See, e.g.*, *Randall v. Loftsgaarden*, 478 U.S. 647, 656–57 (1986) ("[T]ax deductions . . . have no value in themselves; the economic benefit to the investor . . . arises because the investor may offset tax deductions against income received from other sources."). Plaintiffs' attempt to effectively make themselves the taxpayer by receiving the full value of WHR's § 179D tax deduction is in direct conflict with the law. *See* 26 U.S.C. § 179D. ("[The designer] shall be treated as the taxpayer for purposes of this section.").

If Plaintiffs are correct in their contention that the Allocation Forms are void, the IRS (and only the IRS) could determine that WHR's § 179D tax deductions are improper. Plaintiffs will have parted with nothing in favor of WHR to which Plaintiffs are entitled. If Plaintiffs are incorrect and the Allocation Forms are proper, then Plaintiffs' attempt to "recover . . . from Defendants all the benefit

25

they received by use of the void Allocation Forms" fails on its face.  *See* Sec. Am. Compl. ¶ 87.  In either case, Plaintiffs, who do not pay federal taxes, indisputably cannot have utilized the deduction themselves, and cannot support a claim that they should receive a windfall by recovering 100% of WHR's tax deduction.

## IV.   <u>CONCLUSION</u>

WHEREFORE, PREMISES CONSIDERED Defendant WHRA MERGER SUB II, INC n/k/a WHR ARCHITECTS, INC. respectfully requests that the Court grant its Motion to Dismiss, dismiss the Second Amended Complaint with prejudice, and grant WHR such other and further relief, at law or in equity, to which WHR may itself be justly entitled.

RESPECTFULLY SUBMITTED this 14th day of September, 2018.

*/s/ Heather K. Hatfield*

Heather K. Hatfield
Texas State Bar No. 24050730
Southern District of Texas No. 641873
John R. Hawkins
Texas State Bar No. 09249150
Southern District of Texas No. 69594
Katelin E. Cox
Texas State Bar No. 24105752
Southern District of Texas No. 3138169
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas  77002
Telephone: (713) 226-5710
Facsimile:  (713) 226-6310
Email: hhatfield@porterhedges.com
Email: jhawkins@porterhedges.com
Email: kcox@porterhedges.com

**ATTORNEYS FOR DEFENDANT
WHR MERGER SUB II, INC.
N/K/A WHR ARCHITECTS, INC.**

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of September, 2018 a true and correct copy of the foregoing instrument was served via the Court's CM/ECF system on all known counsel of record who are deemed to have consented to electronic service.

*/s/ Heather K. Hatfield*
Heather K. Hatfield